United States Magistrate Court
DSQ-SDTX
FILED

JAN 18 2024   2B

Nathan Ochsner, Clerk
Laredo Division

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 5:23-cr-01112-3-S** |
| | § | |
| **LUIS DANIEL SEGURA GUZMAN,** | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT

The United States of America, by and through Alamdar S. Hamdani, United States Attorney for the Southern District of Texas, and Jennifer Day, Assistant United States Attorney, and the defendant, Luis Daniel Segura Guzman, ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to **Count 1** of the superseding indictment. **Count 1** charges Defendant with conspiracy to transport an undocumented alien within the United States, in violation of Title 8, United States Code, Section 1324 (a)(1)(A)(ii) and (v)(I). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the superseding indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 8, United States Code, Section 1324 (a)(1)(A)(ii) and (v)(I), is imprisonment of not more than 10 years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of not more than 3 years. *See* Title 18, United States Code, Sections 3559(a)(3) and

3583(b)(2). Defendant acknowledges and understands that if he/she should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than 2 years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(e)(3). Defendant understands that the sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his/her immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea

2

of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

**Cooperation**

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to immigration. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)     Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)     Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his/her Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)     Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

3

(d)     Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)     Defendant agrees to provide to the United States all documents in his/her possession or under his/her control relating to all areas of inquiry and investigation; and

(f)     Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his/her plea.

### Waiver of Appeal, Collateral Review, and Statute of Limitations

7.   Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.   Defendant also agrees that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement

4

(including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his/her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

11. The United States agrees to each of the following:

(a)     If Defendant pleads guilty to Count 1 of the superseding indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the superseding indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges he is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law;

(b)     If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas Only

12.   The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the superseding indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

13.   The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)     to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

14.   Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

15.   Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

7

(a)     If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his/her own behalf.

**Factual Basis for Guilty Plea**

16. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count 1 of the superseding indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

On August 23, 2023 investigators with Border Patrol and the Laredo Police Department (LPD) noticed that a Facebook Account with the username "Ds Guz (EL Guz Dando Infierno)" posted the following message on Facebook:



Translated into English, it reads, "exit/departure today in sleeper cab/bunk bed at 3 and 5." Based on training and experience, investigators know that a "salida" or exit, often refers to a trip transporting undocumented aliens (UDAs) to the interior of the United States. Investigators believed that the user of this Facebook account was advertising transportation services via sleeper cabs, and attempting to source UDAs for two loads that would be leaving the Laredo area at 3:00 p.m. and 5:00 p.m. that day.

An LPD Officer, acting in an undercover (UC) capacity, messaged the Ds Guz Facebook Account at approximately 12:00 p.m., posing as a human smuggler who needed transportation. The user of the Facebook Account, later identified as defendant **Luis Daniel Segura Guzman**, asked the UC "how many" and the UC replied "three." **Segura** then requested a phone number for the UC, which the UC provided. Several minutes later, the UC received a WhatsApp call from a male, who identified himself as acting on behalf of "Don El Guz." Agents noted that the WhatsApp account for this male was linked to a Mexican phone number, which was later identified as belonging to **Segura.**

**Segura** and the UC further discussed and coordinated the transportation of the three individuals. The UC agreed to pay $450 USD in Laredo and $7,800 USD once the UDAs arrived at their destination. **Segura** advised the UC that a black Ford Raptor truck would be making the pickup, and that the transfer would occur in the 3200 block of Jaime Zapata Highway in Laredo, Texas at approximately 3:30 p.m.

LPD coordinated with Border Patrol, Customs and Border Protection Air and Marine Operations, and the Texas Department of Public Safety to conduct aerial and ground surveillance in the area of the anticipated meet. At approximately 3:30 p.m., agents observed a black 2018

Raptor, with plates registered to Bernardo Garza, drive into the parking lot of a restaurant in the 3200 block of Jaime Zapata Highway.

Several minutes later, the UC contacted **Segura** to cancel the pickup of the three UDAs. Aerial surveillance was maintained on the Ford Raptor as it drove away from the meet location and to a condominium parking lot in the 100 block of North Merida Drive. There, the Raptor parked near a silver pickup truck. Agents observed three individuals exit the silver truck and enter the Raptor. The Raptor then traveled to a truck yard located in the 7100 block of U.S. Highway 359, where it parked near a red tractor.

Agents observed the driver, Garza, exit the Raptor and open the back passenger door. Three individuals exited the Raptor and entered the parked red tractor. Investigators observed Garza re-enter the Ford Raptor and leave the truck yard. Several minutes later, a marked LPD unit conducted a traffic stop on the Raptor, and confirmed that the driver and only occupant was Garza. Agents also located a firearm inside of Garza's vehicle.

Border Patrol agents also entered the truck yard and approached the parked red tractor. Inside, agents located three individuals, including a 15-year-old female. All three were determined to be citizens of Mexico or El Salvador with no documentation allowing them to enter, travel through, or remain in the United States. One of those individuals, Yeni Mangana-Sandoval, admitted that she illegally crossed into the United States by wading the Rio Grande River and that arrangements had been made to pay a human smuggling organization to transport her to the interior of the United States.

On September 19, 2023, agents identified Francisco Suarez acting as a scout in an unrelated human smuggling attempt. Suarez admitted that he routinely acted as a lookout during smuggling

10

events and/or transported UDAs in exchange for payment. Suarez also admitted that he worked with Bernardo Garza, and identified Garza from a six pack photo array. Suarez told agents that he was the one who provided Garza with the phone number for the stash house that provided the three UDAs that Garza was caught transporting on August 23, 2023. In Suarez's cell phone, agents located a photograph of the same three UDAs that were found inside the tractor on that date. In the photograph, the three UDAs are wearing the same clothing as they were when apprehended by Border Patrol.

Agents encountered **Segura** on September 16, 2023 in Laredo, Texas, and identified him as a citizen of Mexico with no documentation allowing him to enter, travel through, or remain in the United States. After rights advisement and waiver, **Segura** admitted to agents that he had been recruited in Mexico to work with Cartel del Noreste to smuggle UDAs. **Segura** admitted that he worked with "Pancho," who he identified as Francisco Suarez from a six-pack photo array. **Segura** also gave consent to search his cell phone, which agents noted was currently logged into his Facebook Account, under the profile name "Ds Guz." Agents confirmed that this was the same Facebook Account that had advertised human smuggling transportation services on August 23, 2023. Agents located the conversations in **Segura**'s phone with the UC from the smuggling event on the same date. Agents also noted that the phone number associated with **Segura**'s phone was the same Mexican phone number that was tied to the WhatsApp account that communicated with the UC on August 23, 2023.

### Breach of Plea Agreement

17. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea

11

agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Monetary Penalties, Assets and Financial Disclosures

18. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

19. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

## Financial Statement

20. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change.

Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

21. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

**Complete Agreement**

22. This written plea agreement, including the attached addendum of Defendant and his/her attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

25. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at ___Laredo___, Texas, on ___January   18___, 2024

_____
LUIS DANIEL SEGURA GUZMAN

Subscribed and sworn to before me on ___January   18___, 2024

NATHAN KYLE OCHSNER
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Alamdar S. Hamdani
United States Attorney

By: _____
Jennifer L. Day
Assistant United States Attorney
Southern District of Texas

_____
Jose Salvador Tellez, II
Attorney for Defendant

14